# EXHIBIT A

This case has been designated as an eFiling case. To review a copy of the Notice of Mandatory eFiling visit www.oakgov.com/efiling.

**STATE OF MICHIGAN**
**IN THE CIRCUIT COURT FOR THE COUNTY OF OAKLAND**

LAURA DAWSON,

       Plaintiff,.

V

CIGNA CORPORATION, LIFE INSURANCE
COMPANY OF NORTH AMERICA, CIGNA
LIFE INSURANCE COMPANY OF NEW YORK,
And CONNECTICUT GENERAL LIFE INSURANCE COMPANY,

       Defendant.

Case No. 20-    -CK
Hon. 2020-180589-CK

JUDGE NANCI J. GRANT

_____/

RYAN P. DOBSON (P76734)
Law Offices of Daniel Randazzo
Attorneys for Plaintiff
2731 S. Adams Road, Ste. 100
Rochester Hills, MI 48309
248-853-1003 / 248-853-1004 Fax
ryanpdobson@gmail.com
_____/

There is no other pending or resolved civil action arising out of the transaction or occurrence alleged in the complaint.

## COMPLAINT AND JURY DEMAND

Plaintiff, Laura Dawson, by and through her attorney, Ryan Dobson, states:

1. At all times pertinent to this Complaint, Scott Dawson, was a resident of the County of Oakland, State of Michigan.

2. Plaintiff, Laura Dawson, is an individual residing in Oakland County, Michigan, who was the spouse of the decedent, Scott Dawson.

3. Defendant, Cigna Corporation, is a corporation which regularly and continuously conducts business in the County of Oakland, State of Michigan.

4. Defendant, Life Insurance Company of North America, regularly and continuously conducts business in the County of Oakland, State of Michigan.

FILED  Received for Filing  Oakland County Clerk  4/1/2020 11:47 AM

5. Defendant, Cigna Life Insurance Company of New York, regularly and continuously conducts business in the County of Oakland, State of Michigan.

6. Defendant, Connecticut General Life Insurance Company, continuously conducts business in the County of Oakland, State of Michigan.

7. The amount in controversy exceeds $25,000.00.

8. On or about April 1, 2014, Laura Dawson entered into a Group Accident Insurance Policy with the Defendant through her employer. (Exhibit A-Policy).

9. The Defendant's policy provided for Accidental Death and Dismemberment benefits:

"We will pay the benefit for any one of the covered losses listed in the schedule of benefits, if the Covered Person suffers a Covered Loss resulting directly and independently of all other causes from a Covered Accident within the applicable time period specified in the Schedule of Benefits.

If the Covered Person sustains more than one Covered Loss as a result of the same Covered Accident, benefits will be paid for the Covered Loss for which the largest available benefit is payable. If the loss results in death, benefits will only be paid under the Loss of life benefit provision. Any loss of life benefit will be reduced by any paid or payable Accidental Dismemberment benefit. However, if such Accidental Dismemberment benefit equals or exceeds the Loss of Life benefit, no additional benefit will be paid." *See Exhibit A* at p. 17

10. The decedent, Scott Dawson, is a Covered Person within the meaning of the policy and suffered a loss of life when he passed away on June 4, 2017 in his home.

11. Under Basic Accidental Death and Dismemberment Benefits the Employee Principal Sum is defined as:

"2 times Annual Compensation rounded to the next higher $1,000, if not already a multiple thereof, subject to a minimum of $50,000 and a maximum of $500,000."

(*Id.* at p.1).

12. The policy provides a Voluntary accidental death benefit payable to the decedent's spouse, in this instance Plaintiff, in an amount between $25,000 and $250,000.00, based upon the formula in paragraph 8.

13. It further provides for a Voluntary Accidental Death Payment to the decedent's spouse, Plaintiff Dawson, as the employee in an amount between $50,000 and $500,000.00, based upon the formula described in paragraph 8.

14. An autopsy was performed by the Oakland County Medical Examiner Ruben Ortiz-Reyes M.D. The manner of death was unable to be determined.

15. Ms. Dawson made a claim for Group Dependent Accidental Death Insurance benefits under the decedent's policy and provided a copy of his Certificate of Death to the Defendant Insurer.

16. On January 25, 2018, a letter was sent by the Defendant to Laura Dawson, indicating that Defendant had reviewed the policy, and determined that accidental death benefits were not payable. (Exhibit B-Letter 1/25/2018).

17. The Defendant determined benefits were not payable based on the below "Common Exclusions" referenced within its' policy:

In addition to any benefit-specific exclusions, benefits will not be paid for any Covered Injury or Covered Loss which, directly or indirectly, in whole or in party, is caused by or results from any of the following unless coverage is specifically provided for by name in the Description of Benefits Section:

7. Sickness, disease, bodily or mental infirmity, bacterial or viral infection or medical or surgical treatment thereof, except for any bacterial infection resulting from an accidental external cut or wound or accidental ingestion of contaminated food.

11. voluntary ingestion of any narcotic, drug, poison, gas or fumes, unless prescribed or taken under the direction of a Physician and taken in accordance with the prescribed dosage.

3

18. It was specifically concluded by the Defendant that, "Drug Abuse" was the cause of death. (*Id. at* 4).

19. Defendant's denial letter states:

"Mr. Dawson's toxicology results revealed his blood was positive for a "high level" of hydrocodone, which was within a fatal range, mixed with multiple prescription medications. Since the Cause of Death includes toxicity from these drugs, which he was taking as medical treatment, we have determined that his death was "directly or indirectly, in whole or in part," caused by his "Sickness, disease, bodily or mental infirmity...or medical or surgical treatment thereof." (*Id.* at 4).

20. Thereafter, Mrs. Dawson filed an appeal to the determination.

21. On August 15, 2018, Defendant responded affirming the previous determination. (Exhibit C-Denial Appeal Letter 8/15/2018).

22. On October 10, 2018, Mrs. Dawson sent a letter through her counsel requesting a second appeal of her claim for benefits under the policy.

23. On October 23, 2018, Defendant responded again by denying the appeal.

24. Plaintiff now bring the instant action for payment of the aforementioned benefits under Defendant insurer's policy.

### Count I-Breach of Contract

25. Plaintiff incorporates paragraphs 1 through 20 as though fully restated herein.

26. Decedent entered into a policy of Group Accident Insurance with Defendant Insurer for which the applicable premiums were paid.

27. The policy states:

4

We will pay the benefit for any one of the Covered Losses listed in the Schedule of Benefits, if the Covered Person suffers a Covered Loss resulting directly and independently of all other causes from a Covered Accident within the applicable time period specified by the Schedule of Benefits.

If the Covered Person sustains more than one Covered Loss as a result of the same Covered Accident, benefits will be paid for the Covered Loss for which the largest available benefit is payable. If the loss results in death, benefits will only be paid under the Loss of Life benefit provision. Any Loss of Life benefit will be reduced by any paid or payable Accidental Dismemberment benefit. However, if such Accidental Dismemberment benefit equals or exceeds the Loss of Life benefit, no additional benefit will be paid. (*See Exhibit A*, p. 17).

28. Plaintiff suffered a covered loss within the meaning of the policy. Specifically, Mr. Dawson passed away on June 4, 2017.

29. Despite repeated appeals to the Defendant insurer, Defendant has refused to pay Accidental Death Insurance Benefit applicable under the decedent's policy.

30. Defendant's failure to pay the benefits as described in this complaint constitutes a breach of contract between the parties.

31. Plaintiff has been damaged by Defendant's breach in the amount of $50,000.00 to $500,000.00, the loss of life benefit provision provided for such a payment to the employee upon decedent's death.

32. Plaintiff Dawson has further been damaged by Defendant's breach in an amount of $25,000.00 to $250,000.00 as the spouse of the decedent.

WHEREFORE, Plaintiff respectfully requests this Honorable Court enter a Judgement against the Defendant in an amount in excess of $25,000.00 in favor of Plaintiff including costs, interest, and attorney fees.

Respectfully submitted,

**Law Office of Daniel Randazzo**

/s/Ryan P. Dobson
RYAN P. DOBSON (P76734)
Attorney for Plaintiff
2731 S. Adams Rd., Ste. 100
Rochester Hills, MI 48309
248-853-1003

Dated: April 1, 2020

## **JURY DEMAND**

Plaintiff demands a trial by jury.

Respectfully submitted,

**Law Office of Daniel Randazzo**

/s/Ryan P. Dobson
RYAN P. DOBSON (P76734)
Attorney for Plaintiff
2731 S. Adams Rd., Ste. 100
Rochester Hills, MI 48309
248-853-1003

Dated: April 1, 2020

6

# Group Accident
# Insurance Certificate

## Covisint Corporation



**IMPORTANT NOTICES**
**GROUP ACCIDENT**

If you reside in one of the following states, please read the important notices below:

**Arizona residents:**

This certificate of insurance may not provide all benefits and protections provided by law in Arizona. Please read this certificate carefully.

**Florida residents:**

The benefits of the policy providing your coverage are governed primarily by the laws of a state other than Florida.

**Maryland residents:**

This Certificate may omit some of the benefits required for a Certificate issued and delivered in Maryland.

**North Carolina residents:**

This Certificate of Insurance provides all of the benefits mandated by the North Carolina Insurance Code, but it is issued under a group master policy located in another state and may be governed by that state's law.

THIS CERTIFICATE IS NOT A MEDICARE SUPPLEMENT CERTIFICATE. IF YOU ARE ELIGIBLE FOR MEDICARE, REVIEW THE GUIDE TO HEALTH INSURANCE FOR PEOPLE WITH MEDICARE, WHICH IS AVAILABLE FROM LIFE INSURANCE COMPANY OF NORTH AMERICA.

The Policy is a legal contract between the Policyholder and Us.

BENEFITS MAY BE REDUCED. PLEASE SEE THE SCHEDULE OF BENEFITS

**IMPORTANT CANCELLATION INFORMATION – PLEASE READ "POLICY TERMINATION" PROVISION**

UNDER NORTH CAROLINA GENERAL STATUTE SECTION 58-50-40, NO PERSON, EMPLOYER, PRINCIPAL, AGENT, TRUSTEE, OR THIRD PARTY ADMINISTRATOR, WHO IS RESPONSIBLE FOR THE PAYMENT OF GROUP HEALTH OR LIFE INSURANCE OR GROUP HEALTH PLAN PREMIUMS, SHALL: (1) CAUSE THE CANCELLATION OR NONRENEWAL OF GROUP HEALTH OR LIFE INSURANCE, HOSPITAL, MEDICAL, OR DENTAL SERVICE CORPORATION PLAN, MULTIPLE EMPLOYER WELFARE ARRANGEMENT, OR GROUP HEALTH PLAN COVERAGES AND THE CONSEQUENTIAL LOSS OF THE COVERAGES OF THE PERSONS INSURED, BY WILLFULLY FAILING TO PAY THOSE PREMIUMS IN ACCORDANCE WITH THE TERMS OF THE INSURANCE OR PLAN CONTRACT, AND (2) WILLFULLY FAIL TO DELIVER, AT LEAST 45 DAYS BEFORE THE TERMINATION OF THOSE COVERAGES, TO ALL PERSONS COVERED BY THE GROUP POLICY A WRITTEN NOTICE OF THE PERSON'S INTENTION TO STOP PAYMENT OF PREMIUMS. THIS WRITTEN NOTICE MUST ALSO CONTAIN A NOTICE TO ALL PERSONS COVERED BY THE GROUP POLICY OF THEIR RIGHTS TO HEALTH INSURANCE CONVERSION POLICIES UNDER ARTICLE 53 OF CHAPTER 58 OF THE GENERAL STATUTES AND THEIR RIGHTS TO PURCHASE INDIVIDUAL POLICIES UNDER THE FEDERAL HEALTH INSURANCE PORTABILITY AND ACCOUNTABILITY ACT AND UNDER ARTICLE 68 OF CHAPTER 58 OF THE GENERAL STATUTES. VIOLATION OF THIS LAW IS A FELONY. ANY PERSON VIOLATING THIS LAW IS ALSO SUBJECT TO A COURT ORDER REQUIRING THE PERSON TO COMPENSATE PERSONS INSURED FOR EXPENSES OR LOSSES INCURRED AS A RESULT OF THE TERMINATION OF THE INSURANCE.

**Texas residents:**

**THE INSURANCE POLICY UNDER WHICH THIS CERTIFICATE IS ISSUED IS NOT A POLICY OF WORKERS' COMPENSATION INSURANCE. YOU SHOULD CONSULT YOUR EMPLOYER TO DETERMINE WHETHER YOUR EMPLOYER IS A SUBSCRIBER TO THE WORKERS' COMPENSATION SYSTEM.**

# Life Insurance Company of North America
## 1601 Chestnut Street, Philadelphia, Pennsylvania 19192-2235
A Stock Insurance Company

---

## GROUP ACCIDENT CERTIFICATE

### THIS CERTIFICATE PROVIDES LIMITED COVERAGE.
### PLEASE READ YOUR CERTIFICATE CAREFULLY.

We, the Life Insurance Company of North America, have issued a Group Policy, OK 967507 to Trustee of the Group Insurance Trust for Employers in the Transportation and Public Utilities Industry.

We certify that we insure all eligible persons who are enrolled according to the terms of the Group Policy. Your coverage will begin according to the terms set forth in the *Eligibility and Effective Date* provision.

This Certificate describes the benefits and basic provisions of your coverage. It is not the insurance contract and does not waive or alter any terms of the Policy. If questions arise, the Policy language will govern. You may examine the Policy at the office of the Subscriber.

This Certificate replaces all prior Certificates issued to you under the Group Policy.

*Matthew G. Manders*

Matthew G. Manders, President

**THIS CERTIFICATE IS ISSUED UNDER AN ACCIDENT ONLY POLICY. IT DOES NOT PAY BENEFITS FOR LOSS CAUSED BY SICKNESS.**

GA-00-CE1000.00

# TABLE OF CONTENTS

**SECTION**                                                                        **PAGE NUMBER**

SCHEDULE OF BENEFITS ............................................................................................................. 1

GENERAL DEFINITIONS ............................................................................................................. 5

ELIGIBILITY AND EFFECTIVE DATE PROVISIONS ............................................................... 8

COMMON EXCLUSIONS ............................................................................................................ 10

CONVERSION PRIVILEGE ......................................................................................................... 11

CLAIM PROVISIONS .................................................................................................................. 13

ADMINISTRATIVE PROVISIONS ............................................................................................. 15

GENERAL PROVISIONS ............................................................................................................. 16

ACCIDENTAL DEATH AND DISMEMBERMENT COVERAGE .............................................. 17

EXPOSURE AND DISAPPEARANCE COVERAGE .................................................................... 18

BEREAVEMENT AND TRAUMA COUNSELING BENEFIT ..................................................... 18

CHILD CARE CENTER BENEFIT .............................................................................................. 19

HOME ALTERATION AND VEHICLE MODIFICATION BENEFIT .......................................... 20

REHABILITATION BENEFIT ..................................................................................................... 20

SEATBELT AND AIRBAG BENEFIT ......................................................................................... 20

SPECIAL EDUCATION BENEFIT .............................................................................................. 21

SPOUSE RETRAINING BENEFIT .............................................................................................. 22

DOMESTIC PARTNER/CIVIL UNION PARTNER RIDER ......................................................... 23

MODIFYING PROVISIONS AMENDMENT ............................................................................... 28

GA-00-CE1000.00

# SCHEDULE OF BENEFITS

*This Certificate is intended to be read in its entirety. In order to understand all the conditions, exclusions and limitations applicable to its benefits, please read all the provisions carefully.*

The *Schedule of Benefits* provides a brief outline of your coverage and benefits. Please read the *Description of Coverages and Benefits* Section for full details.

**Subscriber:** Covisint Corporation

**Effective Date of Subscriber Participation:** April 1, 2014

**Certificate Effective Date:** Janaury 1, 2017

**Covered Class:** Class 1 - All active, full-time regular United States and Canadian Citizen Employees of the Employer working in the United States, regularly working a minimum of 30 hours per week.

## SCHEDULE OF BENEFITS

This *Schedule of Benefits* shows maximums, benefit periods and any limitations applicable to benefits provided for each Covered Person unless otherwise indicated. Principal Sum, when referred to in this Schedule, means the Employee's Principal Sum in effect on the date of the Covered Accident causing the Covered Injury or Covered Loss unless otherwise specified.

**Eligibility Waiting Period**
The Eligibility Waiting Period is the period of time the Employee must be in a Covered Class to be eligible for coverage.

| | |
|---|---|
| Basic Accident Benefits | |
| For Employees hired on or before the Policy Effective Date: | No waiting period |
| For Employees hired after the Policy Effective Date: | No waiting period |
| Voluntary Accident Benefits: | |
| For Employees hired on or before the Policy Effective Date: | The first of the month following the flex care enrollment period |
| For Employees hired after the Policy Effective Date: | No Waiting Period |

**Time Period for Loss:**
Any Covered Loss must occur within: 365 days of the Covered Accident

**Maximum Age for Insurance:** None

### BASIC ACCIDENTAL DEATH AND DISMEMBERMENT BENEFITS

Employee Principal Sum: 2 times Annual Compensation rounded to the next higher $1,000, if not already a multiple thereof, subject to a minimum of $50,000 and a maximum of $500,000

## SCHEDULE OF COVERED LOSSES

| Covered Loss | Benefit |
|---|---|
| Loss of Life | 100% of the Principal Sum |
| Loss of Two or More Hands or Feet | 100% of the Principal Sum |
| Loss of Sight of Both Eyes | 100% of the Principal Sum |
| Loss of One Hand or One Foot and Sight in One Eye | 100% of the Principal Sum |
| Loss of Speech and Hearing (in both ears) | 100% of the Principal Sum |
| Quadriplegia | 100% of the Principal Sum |
| Paraplegia | 75% of the Principal Sum |
| Hemiplegia | 50% of the Principal Sum |
| Uniplegia | 25% of the Principal Sum |
| Coma | |
|   Monthly Benefit | 1% of the Principal Sum |
|   Number of Monthly Benefits | 11 |
|   When Payable | At the end of each month during which the Covered Person remains comatose |
|   Lump Sum Benefit | 100% of the Principal Sum |
|   When Payable | Beginning of the 12th month |
| Loss of One Hand or Foot | 50% of the Principal Sum |
| Loss of Sight in One Eye | 50% of the Principal Sum |
| Severance and Reattachment of One Hand or Foot | 50% of the Principal Sum |
| Loss of Speech | 50% of the Principal Sum |
| Loss of Hearing (in both ears) | 50% of the Principal Sum |
| Loss of all Four Fingers of the Same Hand | 25% of the Principal Sum |
| Loss of Thumb and Index Finger of the Same Hand | 25% of the Principal Sum |
| Loss of all the Toes of the Same Foot | 20% of the Principal Sum |

**Age Reductions**

A Covered Person's Principal Sum will be reduced to the percentage of his Principal Sum in effect on the date preceding the first reduction, as shown below.

| Age | Percentage of Benefit Amount |
|---|---|
| 70 but less than 75 | 65% |
| 75 or over | 50% |

Benefits reductions will be effective on the date the Covered Person's attainment of age as specified in schedule above.

## ADDITIONAL ACCIDENTAL DEATH AND DISMEMBERMENT COVERAGES

Accidental Death and Dismemberment benefits are provided under the following coverages. Any benefits payable under them are as shown in the *Schedule of Covered Losses* and are not paid in addition to any other Accidental Death and Dismemberment benefits.

**EXPOSURE AND DISAPPEARANCE COVERAGE** provides the Principal Sum multiplied by the percentage applicable to the Covered Loss, as shown in the *Schedule of Covered Losses.*

## ADDITIONAL ACCIDENT BENEFITS

Any benefits payable under these *Additional Accident Benefits* shown below are paid in addition to any other Accidental Death and Dismemberment benefits payable.

## BEREAVEMENT AND TRAUMA COUNSELING BENEFIT

| | |
|---|---|
| Benefit Amount | $100 per session |
| Maximum Number of Sessions | 10 sessions |
| Maximum Benefit Per | |
| Covered Accident | $1,000 |

**HOME ALTERATION AND VEHICLE MODIFICATION BENEFIT**
Benefit                                    10% of the Principal Sum subject to a maximum of $25,000

**REHABILITATION BENEFIT**
Benefit per Covered Accident               10% of the Principal Sum subject to a maximum of $25,000

**SEATBELT AND AIRBAG BENEFIT**
Seatbelt Benefit                           10% of the Principal Sum subject to a Maximum Benefit of
                                           $25,000
Airbag Benefit                             5% of the Principal Sum subject to a Maximum Benefit of
                                           $10,000
Default Benefit                            None

**SPECIAL EDUCATION BENEFIT**
Surviving Dependent Child Benefit          3% of the Principal Sum subject to a Maximum Benefit of
                                           $3,000
Maximum Number of Annual Payments
For Each Surviving Dependent Child         4
Default Benefit                            $1,000

**SPOUSE OR DOMESTIC PARTNER RETRAINING BENEFIT**
Benefit                                    3% of the Principal Sum subject to a Maximum Benefit of
                                           $3,000

### VOLUNTARY ACCIDENTAL DEATH AND DISMEMBERMENT BENEFITS

| | |
|---|---|
| Employee Principal Sum: | $50,000 units |
| Maximum: | $500,000 |
| | |
| Spouse or Domestic Partner Principal Sum: | $25,000 units |
| Maximum: | $250,000 |
| | |
| Dependent Child Principal Sum: | $5,000 units |
| Maximum: | $20,000 |

### SCHEDULE OF COVERED LOSSES

| Covered Loss | Benefit |
|---|---|
| Loss of Life | 100% of the Principal Sum |
| Loss of Two or More Hands or Feet | 100% of the Principal Sum |
| Loss of Sight of Both Eyes | 100% of the Principal Sum |
| Loss of One Hand or One Foot and Sight in One Eye | 100% of the Principal Sum |
| Loss of Speech and Hearing (in both ears) | 100% of the Principal Sum |
| Quadriplegia | 100% of the Principal Sum |
| Paraplegia | 75% of the Principal Sum |
| Hemiplegia | 50% of the Principal Sum |
| Uniplegia | 25% of the Principal Sum |
| Coma | |
| Monthly Benefit | 1% of the Principal Sum |
| Number of Monthly Benefits | 11 |
| When Payable | At the end of each month during which the Covered Person remains comatose |
| Lump Sum Benefit | 100% of the Principal Sum |
| When Payable | Beginning of the 12th month |
| Loss of One Hand or Foot | 50% of the Principal Sum |
| Loss of Sight in One Eye | 50% of the Principal Sum |
| Severance and Reattachment of One Hand or Foot | 50% of the Principal Sum |

| Covered Loss | Benefit |
|---|---|
| Loss of Speech | 50% of the Principal Sum |
| Loss of Hearing (in both ears) | 50% of the Principal Sum |
| Loss of all Four Fingers of the Same Hand | 25% of the Principal Sum |
| Loss of Thumb and Index Finger of the Same Hand | 25% of the Principal Sum |
| Loss of all the Toes of the Same Foot | 20% of the Principal Sum |

## ADDITIONAL ACCIDENTAL DEATH AND DISMEMBERMENT COVERAGES

Accidental Death and Dismemberment benefits are provided under the following coverages. Any benefits payable under them are as shown in the *Schedule of Covered Losses* and are not paid in addition to any other Accidental Death and Dismemberment benefits.

**EXPOSURE AND DISAPPEARANCE COVERAGE** provides the Principal Sum multiplied by the percentage applicable to the Covered Loss, as shown in the *Schedule of Covered Losses*.

## ADDITIONAL ACCIDENT BENEFITS

Any benefits payable under these *Additional Accident Benefits* shown below are paid in addition to any other Accidental Death and Dismemberment benefits payable.

### BEREAVEMENT AND TRAUMA COUNSELING BENEFIT

| | |
|---|---|
| Benefit Amount | $100 per session |
| Maximum Number of Sessions | 10 sessions |
| Maximum Benefit Per Covered Accident | $1000 |

### CHILD CARE CENTER BENEFIT

| | |
|---|---|
| Benefit Amount | 3% of the Employee's Principal Sum subject to a maximum of $3,000 per year |
| Maximum Benefit Period | the earlier of 4 years or until the child turns 13 for each surviving Dependent Child |

### HOME ALTERATION AND VEHICLE MODIFICATION BENEFIT

| | |
|---|---|
| Benefit | 10% of the Principal Sum subject to a maximum of $25,000 |

### REHABILITATION BENEFIT

| | |
|---|---|
| Benefit per Covered Accident | 10% of the Principal Sum subject to a maximum of $25,000 |

### SEATBELT AND AIRBAG BENEFIT

| | |
|---|---|
| Seatbelt Benefit | 10% of the Principal Sum subject to a Maximum Benefit of $25,000 |
| Airbag Benefit | 5% of the Principal Sum subject to a Maximum Benefit of $10,000 |
| Default Benefit | None |

### SPECIAL EDUCATION BENEFIT

| | |
|---|---|
| Surviving Dependent Child Benefit | 3% of the Principal Sum subject to a Maximum Benefit of $3,000 |
| Maximum Number of Annual Payments For Each Surviving Dependent Child | 4 |
| Default Benefit | $1,000 |

### SPOUSE OR DOMESTIC PARTNER RETRAINING BENEFIT

| | |
|---|---|
| Benefit | 3% of the Principal Sum subject to a Maximum Benefit of $3,000 |

GA-00-1100.00

4

## GENERAL DEFINITIONS

Please note that certain words used in this Certificate have specific meanings. The words defined below and capitalized within the text of this Certificate have the meanings set forth below.

**Active Service**
An Employee will be considered in Active Service with the Employer on any day that is either of the following:
1.  one of the Employer's scheduled work days on which the Employee is performing his regular duties on a full-time basis, either at one of the Employer's usual places of business or at some other location to which the Employer's business requires the Employee to travel;
2.  a scheduled holiday, vacation day or period of Employer-approved paid leave of absence, other than sick leave, only if the Employee was in Active Service on the preceding scheduled workday.

**Age**
A Covered Person's Age, for purposes of initial premium calculations, is his Age attained on the date coverage becomes effective for him under this Policy. Thereafter, it is his Age attained on his last birthday.

**Aircraft**
A vehicle which:
1.  has a valid certificate of airworthiness; and
2.  is being flown by a pilot with a valid license to operate the Aircraft.

**Annual Compensation**
Annual Compensation means an Employee's annual wage or salary as reported by the Employer for work performed for the Employer as of the date the covered loss occurs. It does not include amounts received as bonuses, commissions, overtime pay or other extra compensation. Annual Compensation is determined initially on the date an Employee applies for coverage. A change in the amount of Annual Compensation is effective on the January 1st following the date of the change, if the Employer gives the Insurance Company written notice of the change and the required premium is paid.

**Covered Accident**
A sudden, unforeseeable, external event that results, directly and independently of all other causes, in a Covered Injury or Covered Loss and meets all of the following conditions:
1.  occurs while the Covered Person is insured under this Policy;
2.  is not contributed to by disease, Sickness, mental or bodily infirmity;
3.  is not otherwise excluded under the terms of this Policy.

**Covered Injury**
Any bodily harm that results directly and independently of all other causes from a Covered Accident.

**Covered Loss**
A loss that is all of the following:
1.  the result, directly and independently of all other causes, of a Covered Accident;
2.  one of the Covered Losses specified in the *Schedule of Covered Losses*;
3.  suffered by the Covered Person within the applicable time period specified in the *Schedule of Benefits*.

**Covered Person**
An eligible person, as defined in the *Schedule of Benefits*, for whom an enrollment form has been accepted by Us and required premium has been paid when due and for whom coverage under this Policy remains in force.

**Employee**
For eligibility purposes, an Employee of the Employer who is in one of the Covered Classes.

**Employer**
The Subscriber and any affiliates, subsidiaries or divisions shown in the *Schedule of Covered Affiliates* and which are covered under this Policy on the date of issue or subsequently agreed to by Us.

**He, His, Him**
Refers to any individual, male or female.

**Hospital**
An institution that meets all of the following:
1.  it is licensed as a Hospital pursuant to applicable law;
2.  it is primarily and continuously engaged in providing medical care and treatment to sick and injured persons;
3.  it is managed under the supervision of a staff of medical doctors;
4.  it provides 24-hour nursing services by or under the supervision of a graduate registered nurse (R.N.);
5.  it has medical, diagnostic and treatment facilities, with major surgical facilities on its premises, or available on a prearranged basis;
6.  it charges for its services.

The term Hospital does not include a clinic, facility, or unit of a Hospital for:
1.  rehabilitation, convalescent, custodial, educational or nursing care;
2.  the aged, drug addicts or alcoholics;
3.  a Veteran's Administration Hospital or Federal Government Hospital unless the Covered Person incurs an expense.

**Inpatient**
A Covered Person who is confined for at least one full day's Hospital room and board. The requirement that a person be charged for room and board does not apply to confinement in a Veteran's Administration Hospital or Federal Government Hospital and in such case, the term 'Inpatient' shall mean a Covered Person who is required to be confined for a period of at least a full day as determined by the Hospital.

**Nurse**
A licensed graduate Registered Nurse (R.N.), a licensed practical Nurse (L.P.N.) or a licensed vocational Nurse (L.V.N.) and who is not:
1.  employed or retained by the Subscriber;
2.  living in the Covered Person's household; or
3.  a parent, sibling, spouse or child of the Covered Person.

**Outpatient**
A Covered Person who receives treatment, services and supplies while not an Inpatient in a Hospital.

**Physician**
A licensed health care provider practicing within the scope of his license and rendering care and treatment to a Covered Person that is appropriate for the condition and locality and who is not:
1.  employed or retained by the Subscriber;
2.  living in the Covered Person's household;
3.  a parent, sibling, spouse or child of the Covered Person.

**Prior Plan**
The plan of insurance providing similar benefits, sponsored by the Employer in effect immediately prior to this Policy's Effective Date.

**Sickness**
A physical or mental illness.

**Subscriber**
Any participating organization that subscribes to the trust to which this Policy is issued.

**Totally Disabled or Total Disability**
Totally Disabled or Total Disability means either:
1.  inability of the Covered Person who is currently employed to do any type of work for which he is or may become qualified by reason of education, training or experience; or
2.  inability of the Covered Person who is not currently employed to perform all of the activities of daily living including eating, transferring, dressing, toileting, bathing, and continence, without human supervision or assistance.

**We, Us, Our**
Life Insurance Company of North America.

**You, Your**
The person to whom the certificate is issued.

GA-00-1200.00

# ELIGIBILITY AND EFFECTIVE DATE PROVISIONS

**Subscriber Effective Date**
Accident Insurance Benefits become effective for each Subscriber in consideration of the Subscriber's application, Subscription Agreement and payment of the initial premium when due.  Insurance coverage for the Subscriber becomes effective on the Effective Date of Subscriber Participation.

**Eligibility**
An Employee becomes eligible for insurance under this Policy on the date he meets all of the requirements of one of the Covered Classes and completes any Eligibility Waiting Period, as shown in the *Schedule of Benefits.*

**Effective Date for Individuals**
*Basic Accidental Death and Dismemberment Benefits*
Insurance becomes effective for an eligible Employee, subject to the *Deferred Effective Date* provision below, on the latest of the following dates:
1.   the effective date of this Policy;
2.   the date the Employee becomes eligible.

*Voluntary Accidental Death and Dismemberment Benefits*
Insurance becomes effective for an eligible Employee who applies and agrees to make required contributions within 31 days of eligibility, and subject to the *Deferred Effective Date* provision below, on the latest of the following dates:
1.   the effective date of this Policy;
2.   the date the Employee becomes eligible;
3.   the date We receive the Employee's completed enrollment form and the required first premium, during his lifetime.

## DEFERRED EFFECTIVE DATE
**Active Service**
The effective date of insurance will be deferred for any Employee who is not in Active Service on the date coverage would otherwise become effective.  Coverage will become effective on the later of the date he returns to Active Service and the date coverage would otherwise have become effective.

**Effective Date of Changes**
Any increase or decrease in the amount of insurance for the Covered Person resulting from:
1.   a change in benefits provided by this Policy; or
2.   a change in the Employee's Covered Class will take effect on the date of such change.
Increases will take effect subject to any Active Service requirement.

## TERMINATION OF INSURANCE
The insurance on a Covered Person will end on the earliest date below:
1.   the date this Policy or insurance for a Covered Class is terminated;
2.   the next premium due date after the date the Covered Person is no longer in a Covered Class or satisfies eligibility requirements under this Policy;
3.   the last day of the last period for which premium is paid;
4.   the next premium due date after the Covered Person attains the maximum Age for insurance under this Policy.

Termination will not affect a claim for a Covered Loss or Covered Injury that is the result, directly and independently of all other causes, of a Covered Accident that occurs while coverage was in effect.

8

**CONTINUATION OF INSURANCE**
**Continuation for Layoff, Leave of Absence or Family Medical Leave**
Insurance for an Employee and Covered Dependents may be continued until the earliest of the following dates if: (a) an Employee is on a temporary layoff, an Employer-approved leave of absence or an Employer-approved family medical leave; and (b) required premium contributions are paid when due.
1.  for a layoff:  the last day of the pay cycle.
2.  for an Employer-approved leave of absence:  6 month(s).
3.  for an Employer-approved family medical leave:  up to the later of the period of the approved FMLA leave or the leave period required by law in the state in which the Employee is employed.

GA-00-1300.00

# COMMON EXCLUSIONS

In addition to any benefit-specific exclusions, benefits will not be paid for any Covered Injury or Covered Loss which, directly or indirectly, in whole or in part, is caused by or results from any of the following unless coverage is specifically provided for by name in the *Description of Benefits* Section:

1. intentionally self-inflicted injury, suicide or any attempt thereat while sane or insane;
2. commission or attempt to commit a felony or an assault;
3. commission of or active participation in a riot or insurrection;
4. bungee jumping; parachuting; skydiving; parasailing; hang-gliding;
5. declared or undeclared war or act of war;
6. flight in, boarding or alighting from an Aircraft or any craft designed to fly above the Earth's surface:
    a. except as a passenger on a regularly scheduled commercial airline;
    b. being flown by the Covered Person or in which the Covered Person is a member of the crew;
    c. being used for:
        i. crop dusting, spraying or seeding, giving and receiving flying instruction, fire fighting, sky writing, sky diving or hang-gliding, pipeline or power line inspection, aerial photography or exploration, racing, endurance tests, stunt or acrobatic flying; or
        ii. any operation that requires a special permit from the FAA, even if it is granted (this does not apply if the permit is required only because of the territory flown over or landed on);
    d. designed for flight above or beyond the earth's atmosphere;
    e. an ultra-light or glider;
    f. being used for the purpose of parachuting or skydiving;
    g. being used by any military authority, except an Aircraft used by the Air Mobility Command or its foreign equivalent;
7. Sickness, disease, bodily or mental infirmity, bacterial or viral infection or medical or surgical treatment thereof, except for any bacterial infection resulting from an accidental external cut or wound or accidental ingestion of contaminated food;
8. travel in any Aircraft owned, leased or controlled by the Subscriber, or any of its subsidiaries or affiliates. An Aircraft will be deemed to be 'controlled' by the Subscriber if the Aircraft may be used as the Subscriber wishes for more than 10 straight days, or more than 15 days in any year;
9. a Covered Accident that occurs while engaged in the activities of active duty service in the military, navy or air force of any country or international organization. Covered Accidents that occur while engaged in Reserve or National Guard training are not excluded until training extends beyond 31 days.
10. operating any type of vehicle while under the influence of alcohol or any drug, narcotic or other intoxicant including any prescribed drug for which the Covered Person has been provided a written warning against operating a vehicle while taking it. Under the influence of alcohol, for purposes of this exclusion, means intoxicated, as defined by the law of the state in which the Covered Accident occurred;
11. voluntary ingestion of any narcotic, drug, poison, gas or fumes, unless prescribed or taken under the direction of a Physician and taken in accordance with the prescribed dosage;
12. in addition, benefits will not be paid for services or treatment rendered by a Physician, Nurse or any other person who is:
    a. employed or retained by the Subscriber;
    b. providing homeopathic, aroma-therapeutic or herbal therapeutic services;
    c. living in the Covered Person's household;
    d. a parent, sibling, spouse or child of the Covered Person.

GA-00-1403.00

# CONVERSION PRIVILEGE

1.  If the Covered Person's insurance or any portion of it ends for any of the following reasons:
    a.   employment or membership ends;
    b.   eligibility ends (except for age for the Employee or Covered Spouse);
    the Covered Person may have Us issue converted accident insurance on an individual policy or an individual certificate under a designated group policy.  The Covered Person may apply for an amount of coverage that is:
    a.   in $1,000 increments;
    b.   not less than $25,000, regardless of the amount of insurance under the group policy; and
    c.   not more than the amount of insurance he had under the group policy, except as provided above, up to a maximum amount of $250,000.

    The Covered Person must be under age 70 to get a converted policy.

    If the Covered Person's insurance or any portion of it ends for non-payment of premium, he may not convert.  If the Covered Person's insurance ends for a reason described in 2. below, conversion is subject to that section.

    The converted policy or certificate will cover accidental death and dismemberment.  The policy or certificate will not contain disability or other additional benefits.  The Covered Person need not show Us that he is insurable.

    If the Covered Person has converted his group coverage and later becomes insured under the same group plan as before, he may not convert a second time unless he provides, at his own expense, proof of insurability or proof of the prior converted policy is no longer in force.

    The Covered Person must apply for the individual policy within 31 days after his coverage under this Group Policy ends and pay the required premium, based on Our table of rates for such policies, his Age and class of risk.  If the Covered Person has assigned ownership of his group coverage, the owner/assignee must apply for the individual policy.

    If the Covered Person suffers a Covered Loss or dies during this 31-day period as the result of an accident that would have been covered under this Group Policy, We will pay as a claim under this Group Policy the amount of insurance that the Covered Person was entitled to convert.  It does not matter whether the Covered Person applied for the individual policy or certificate.  If such policy or certificate is issued, it will be in exchange for any other benefits under this Group Policy.

    The individual policy or certificate will take effect on the day following the date coverage under the Group Policy ended; or, if later, the date application is made.

    **Exclusions**
    The converted policy may exclude the hazards or conditions that apply to the Covered Person's group coverage at the time it ends.  We will reduce payment under the converted policy by the amount of any benefits paid under the group policy if both cover the same loss.

2.  If the Covered Person's insurance ends because this Group Policy is terminated or is amended to terminate insurance for the Covered Person's class, and he has been covered under this Group Policy or, any group accident insurance issued to the Employer which the Group Policy replaced, for at least five years, the Covered Person may have Us issue an individual policy or certificate of accident insurance subject to the same terms, conditions and limitations listed above.  However, the amount he may apply for will be limited to the lesser of the following:
    a.   coverage under this Group Policy less any amount of group accident insurance for which he is eligible on the date this Group Policy is terminated or for which he became eligible within 31 days of such termination, or
    b.   $10,000.

**Extension of Conversion Period**
If the Covered Person is eligible to convert and is not notified of this right at least 15 days prior to the end of the 31 day conversion period, the conversion period will be extended. The Covered Person will have 15 days from the date notice is given to apply for a converted policy or certificate. In no event will the conversion period be extended beyond 90 days. Notice, for the purpose of this section, means written notice presented to the Covered Person by the Subscriber or mailed to the Covered Person's last known address as reported by the Subscriber.

If the Covered Person sustains a Covered Loss or dies during the extended conversion period, but more than 31 days after his coverage under the Group Policy terminates, benefits will not be paid under the Group Policy. If the Covered Person's application for a converted policy or certificate is received by Us and the required premium is paid, benefits may be payable under the converted policy or certificate.

GA-01-1505.00

## CLAIM PROVISIONS

**Notice of Claim**
Written or authorized electronic/telephonic notice of claim must be given to Us within 31 days after a Covered Loss occurs or begins or as soon as reasonably possible. If written or authorized electronic/telephonic notice is not given in that time, the claim will not be invalidated or reduced if it is shown that written or authorized electronic/telephonic notice was given as soon as was reasonably possible. Notice can be given to Us at Our Home Office in Philadelphia, Pennsylvania, such other place as We may designate for the purpose, or to Our authorized agent. Notice should include the Subscriber's name and policy number and the Covered Person's name, address, policy and certificate number.

**Claim Forms**
We will send claim forms for filing proof of loss when We receive notice of a claim. If such forms are not sent within 15 days after We receive notice, the proof requirements will be met by submitting, within the time fixed in this Policy for filing proof of loss, written or authorized electronic proof of the nature and extent of the loss for which the claim is made.

**Claimant Cooperation Provision**
Failure of a claimant to cooperate with Us in the administration of the claim may result in termination of the claim. Such cooperation includes, but is not limited to, providing any information or documents needed to determine whether benefits are payable or the actual benefit amount due.

**Proof of Loss**
Written or authorized electronic proof of loss satisfactory to Us must be given to Us at Our office, within 90 days of the loss for which claim is made. If (a) benefits are payable as periodic payments and (b) each payment is contingent upon continuing loss, then proof of loss must be submitted within 90 days after the termination of each period for which We are liable. If written or authorized electronic notice is not given within that time, no claim will be invalidated or reduced if it is shown that such notice was given as soon as reasonably possible. In any case, written or authorized electronic proof must be given not more than one year after the time it is otherwise required, except if proof is not given solely due to the lack of legal capacity.

**Time of Payment of Claims**
We will pay benefits due under this Policy for any loss other than a loss for which this Policy provides any periodic payment immediately upon receipt of due written or authorized electronic proof of such loss. Subject to due written or authorized electronic proof of loss, all accrued benefits for loss for which this Policy provides periodic payment will be paid monthly unless otherwise specified in the benefits descriptions and any balance remaining unpaid at the termination of liability will be paid immediately upon receipt of proof satisfactory to Us.

**Manner of Payment of Claims**
The Subscriber authorizes that any benefit payment due as a lump sum of $5,000 or more shall be credited to a draft account with the Insurance Company, in the name of the beneficiary. The beneficiary may withdraw the entire proceeds at any time by issuing one or more drafts, or may withdraw lesser amounts, subject to a minimum account balance set by the Insurance Company from time to time. Interest shall be credited to such account at rates as determined from time to time by the Insurance Company.

**Payment of Claims**
All benefits will be paid in United States currency. Benefits for loss of life will be payable in accordance with the *Beneficiary* provision and these Claim Provisions. All other proceeds payable under this Policy, unless otherwise stated, will be payable to the covered Employee or to his estate.

If We are to pay benefits to the estate or to a person who is incapable of giving a valid release, We may pay $1,000 to a relative by blood or marriage whom We believe is equitably entitled. Any payment made by Us in good faith pursuant to this provision will fully discharge Us to the extent of such payment and release Us from all liability.

**Physical Examination and Autopsy**
We, at Our own expense, have the right and opportunity to examine You when and as often as We may reasonably require while a claim is pending and to make an autopsy in case of death where it is not forbidden by law.

**Legal Actions**
No action at law or in equity may be brought to recover under this Policy less than 60 days after written or authorized electronic proof of loss has been furnished as required by this Policy. No such action will be brought more than three years after the time such written proof of loss must be furnished.

**Beneficiary**
The beneficiary is the person or persons You name or change on a form executed by You and satisfactory to Us. This form may be in writing or by any electronic means agreed upon between Us and the Subscriber. Consent of the beneficiary is not required to affect any changes, unless the beneficiary has been designated as an irrevocable beneficiary, or to make any assignment of rights or benefits permitted by this Policy.

A beneficiary designation or change will become effective on the date You execute it. However, We will not be liable for any action taken or payment made before We record notice of the change at our Home Office.

If more than one person is named as beneficiary, the interests of each will be equal unless You have specified otherwise. The share of any beneficiary who does not survive You will pass equally to any surviving beneficiaries unless otherwise specified.

If there is no named beneficiary or surviving beneficiary, or if You die while benefits are payable to You, We may make direct payment to the first surviving class of the following classes of persons:
1. spouse;
2. child or children;
3. mother or father;
4. sisters or brothers;
5. your estate.

**Recovery of Overpayment**
If benefits are overpaid, We have the right to recover the amount overpaid by either of the following methods.
1. A request for lump sum payment of the overpaid amount.
2. A reduction of any amounts payable under this Policy.

If there is an overpayment due when You die, We may recover the overpayment from Your estate.

GA-00-CE1600.00 as modified by RA-GA-1000.00

## ADMINISTRATIVE PROVISIONS

**Premiums**
All premium rates are expressed in, and all premiums are payable in, United States currency. The premiums for this Policy will be based on the rates set forth in the Policy, the plan and amounts of insurance in effect. If Your insurance amounts are reduced due to age, premium will be based on the amounts of insurance in force on the day after the reduction took place.

**Draft Accounts**
The Insurance Company shall be entitled to retain, as part of its compensation, any earnings on draft accounts created in connection with benefit claims, in excess of interest credited under the terms of the policy.

**Grace Period**
A Grace Period of 31 days will be granted for payment of required premiums under this Policy. Insurance under this Policy for You will remain in force during the Grace Period. We will reduce any benefits payable for any claims incurred during the grace period by the amount of premium due. If no such claims are incurred and premium is not paid during the grace period, insurance will end on the last day of the period for which premiums were paid.

GA-00-CE1701.00 as modified by RA-GA-1000.00

Jennifer C. ext. 5057561
Accident Claim Specialist
Life and Accident Claim Services



January 29, 2018

PO Box 22328
Pittsburgh, PA 15222-0328
Telephone 1-800-238-2125
Fax 203-678-7911

Laura Dawson
717 Detroit Ave
Royal Oak, MI 48073

| | |
|---|---|
| **Customer Name:** | **Laura Dawson** |
| **Date of Birth:** | **10/16/1966** |
| **Dependent Name:** | **Scott Dawson** |
| **Dependent Date of Birth:** | **7/8/1967** |
| **Policy Number:** | **OK 967507** |
| **Underwriting Company:** | **Life Insurance Company of North America** |

Dear Mrs. Dawson:

Per your request, enclosed is a copy of the following records that we received for the Group Accidental Death claim review for Scott Dawson:

- Royal Oak Police Department Case Report
- Records from Dr. Brian Felice's office (Beaumont Healthy – Royal Oak)
- Records from Dr. Howard Wright's office (Dearborn Family Clinic)
- Records from Dr. Leonard Rosen's office (Oakland Community Health Network)

If you have any questions, please call me. You may reach me directly at 412-505-7561 or at our toll free number 1-800-238-2125 extension 5057561 from 7:00 a.m. to 5:30 p.m. Eastern Time, Monday through Thursday or email at AccidentTeam@Cigna.com. If you call and get my voice mail, please leave a message and your call will be returned within one business day.

Sincerely,

*Jennifer C.*
Jennifer C. ext. 5057561

"Cigna" and the "Tree of Life" logo are registered service marks of Cigna Intellectual Property, Inc., licensed for use by Cigna Corporation and its operating subsidiaries. All products and services are provided by or through such operating subsidiaries, including Life Insurance Company of North America, Cigna Life Insurance Company of New York and Connecticut General Life Insurance Company, and not by Cigna Corporation.

**West Virginia residents:**

1. Under the *General Definitions* section, the definition of Covered Accident does not include reference to an "external" event.

2. Under the *General Definitions* section, the definition of Hospital does not require that an institution be licensed as a Hospital pursuant to applicable law, but does require that an institution operate pursuant to applicable law.

3. Under the *General Definitions* section, the definition of Totally Disabled or Total Disability is replaced with the following:
   **Totally Disabled or Total Disability**
   Totally Disabled or Total Disability means either:
   1. inability of the Covered Person who is currently employed to perform substantially all of the material duties of his job, or any other job for which he is or may become qualified by reason of education, training or experience; or
   2. inability of the Covered Person who is not currently employed to perform all of the activities of daily living including eating, transferring, dressing, toileting, bathing, and continence, without human supervision or assistance.

Signed for the
**Life Insurance Company of North America**

*Matthew G. Manders*

Matthew G. Manders, President

GA-00-3000.00

# GENERAL PROVISIONS

**Misstatement of Fact**
If You have misstated any fact, all amounts payable under this Policy will be such as the premium paid would have purchased had such fact been correctly stated.

**Multiple Certificates**
You may have in force only one certificate of insurance at a time under this Policy. If at any time You have been issued more than one certificate, then only the largest shall be in effect. We will refund premiums paid for the others for any period of time that more than one certificate was issued.

**Assignment**
We will be bound by an assignment of a Covered Person's insurance under this Policy only when the original assignment or a certified copy of the assignment, signed by the Covered Person and any irrevocable beneficiary, is filed with Us. The assignee may exercise all rights and receive all benefits assigned only while the assignment remains in effect and insurance under this Policy and the Covered Person's certificate remains in force.

**Incontestability of Your Insurance**
All statements made by You are considered representations and not warranties. No statement will be used to deny or reduce benefits or be used as a defense to a claim, unless a copy of the instrument containing the statement is, or has been, furnished to the claimant.

After two years from Your effective date of insurance, or from the effective date of increased benefits, no such statement will cause insurance or the increased benefits to be contested except for fraud or lack of eligibility for insurance.

In the event of death or incapacity, the beneficiary or representative shall be given a copy.

**Clerical Error**
Insurance for You will not be affected by error or delay in keeping records of insurance under this Policy. If such error or delay is found, We will adjust the premium fairly.

**Policy Changes**
We may agree with the Subscriber to modify a plan of benefits without Your consent.

**Workers' Compensation Insurance**
This Policy is not in place of and does not affect any requirements for coverage under any Workers' Compensation law.

GA-00-CE1800.00

# DESCRIPTION OF COVERAGES AND BENEFITS

This *Description of Coverages and Benefits* Section describes the Accident Coverages and Benefits provided to You. Benefit amounts, benefit periods and any applicable aggregate and benefit maximums are shown in the *Schedule of Benefits*. Certain words capitalized in the text of these descriptions have special meanings within this Certificate and are defined in the *General Definitions* section. Please read these and the *Common Exclusions* sections in order to understand all of the terms, conditions and limitations applicable to these coverages and benefits.

## ACCIDENTAL DEATH AND DISMEMBERMENT BENEFITS

**Covered Loss**     We will pay the benefit for any one of the Covered Losses listed in the *Schedule of Benefits*, if the Covered Person suffers a Covered Loss resulting directly and independently of all other causes from a Covered Accident within the applicable time period specified in the *Schedule of Benefits*.

If the Covered Person sustains more than one Covered Loss as a result of the same Covered Accident, benefits will be paid for the Covered Loss for which the largest available benefit is payable. If the loss results in death, benefits will only be paid under the Loss of Life benefit provision. Any Loss of Life benefit will be reduced by any paid or payable Accidental Dismemberment benefit. However, if such Accidental Dismemberment benefit equals or exceeds the Loss of Life benefit, no additional benefit will be paid.

**Definitions**     **Loss of a Hand or Foot** means complete Severance through or above the wrist or ankle joint.

**Loss of Sight** means the total, permanent loss of all vision in one eye which is irrecoverable by natural, surgical or artificial means.

**Loss of Speech** means total and permanent loss of audible communication which is irrecoverable by natural, surgical or artificial means.

**Loss of Hearing** means total and permanent loss of ability to hear any sound in both ears which is irrecoverable by natural, surgical or artificial means.

**Loss of a Thumb and Index Finger of the Same Hand or Four Fingers of the Same Hand** means complete Severance through or above the metacarpophalangeal joints of the same hand (the joints between the fingers and the hand).

**Loss of Toes** means complete Severance through the metatarsalphalangeal joint.

**Paralysis or Paralyzed** means total loss of use of a limb. A Physician must determine the loss of use to be complete and irreversible.

**Quadriplegia** means total Paralysis of both upper and both lower limbs.

**Hemiplegia** means total Paralysis of the upper and lower limbs on one side of the body.

**Paraplegia** means total Paralysis of both lower limbs or both upper limbs.

**Uniplegia** means total Paralysis of one upper or one lower limb.

**Coma** means a profound state of unconsciousness which resulted directly and independently from all other causes from a Covered Accident, and from which the Covered Person is not likely to be aroused through powerful stimulation. This condition must be diagnosed and treated regularly by a Physician. Coma does not mean any state of unconsciousness intentionally induced during the course of treatment of a Covered Injury unless the state of unconsciousness results from the administration of anesthesia in preparation for surgical treatment of that Covered Accident.

**Severance** means the complete and permanent separation and dismemberment of the part from the body.

**Exclusions**     The exclusions that apply to this benefit are in the *Common Exclusions* section.
GA-00-2100.00

## ADDITIONAL ACCIDENTAL DEATH AND DISMEMBERMENT COVERAGES

Accidental Death and Dismemberment benefits are provided under the following coverages. Any benefits payable under them are shown in the *Schedule of Covered Losses* and will not be paid in addition to any other Accidental Death and Dismemberment benefits payable.

### EXPOSURE AND DISAPPEARANCE COVERAGE

Benefits for Accidental Death and Dismemberment, as shown in the *Schedule of Covered Losses*, will be payable if a Covered Person suffers a Covered Loss which results directly and independently of all other causes from unavoidable exposure to the elements following a Covered Accident.

If the Covered Person disappears and is not found within one year from the date of the wrecking, sinking or disappearance of the conveyance in which the Covered Person was riding in the course of a trip which would otherwise be covered under this Policy, it will be presumed that the Covered Person's death resulted directly and independently of all other causes from a Covered Accident.

**Exclusions**     The exclusions that apply to this coverage are in the *Common Exclusions* Section.
GA-00-2202.00

## ADDITIONAL ACCIDENT BENEFITS

Accidental Death and Dismemberment benefits are provided under the following Additional Benefits. Any benefits payable under them will be paid in addition to any other Accidental Death and Dismemberment benefit payable.

### BEREAVEMENT AND TRAUMA COUNSELING BENEFIT

We will pay counseling sessions, up to the Maximum Benefit Amount shown in the *Schedule of Benefits* and subject to the following conditions and exclusions, when the Covered Person or Immediate Family Member requires bereavement and trauma counseling because the Covered Person suffered a Covered Loss that resulted directly and independently of all other causes from a Covered Accident. Such counseling must meet all of the following conditions:
1.  covered bereavement and trauma counseling expenses must be incurred within one year from the date of the Covered Accident causing the Covered Loss;
2.  the expense is charged for a bereavement or trauma counseling session for the Covered Person or one or more of his Immediate Family Members;
3.  counseling is provided under the care, supervision or order of a Physician;
4.  a charge would have been made if no insurance existed.

**Definitions**     For purposes of this benefit:
   **Immediate Family Member** means a person who is related to the Covered Person in any of the following ways: Spouse, brother-in-law, sister-in-law, son-in-law, daughter-in-law, mother-in-law, father-in-law, parent (includes stepparent), brother or sister (includes stepbrother or stepsister) or child (includes legally adopted child or stepchild).

**Exclusions**     Covered bereavement and trauma counseling benefits do not include any expense for which the Covered Person is entitled to benefits under any Workers' Compensation Act or similar law.

   Other exclusions that apply to this benefit are in the *Common Exclusions* Section.
GA-00-2214.00

**CHILD CARE CENTER BENEFIT**

We will pay benefits shown in the *Schedule of Benefits* for the care of each surviving Dependent Child in a Child Care Center if death of the covered Employee results directly and independently of all other causes from a Covered Accident and all of the following conditions are met:

1. coverage for his Dependent Children was in force on the date of the Covered Accident causing his death; and
2. one or more surviving Dependent Children is under Age 13 and:
   a. was enrolled in a Child Care Center on the date of the Covered Accident; or
   b. enrolls in a Child Care Center within 90 days from the date of the Covered Accident.

This benefit will be payable to the Surviving Spouse if the Spouse has custody of the child. If the Surviving Spouse does not have custody of the child, benefits will be paid to the child's legally appointed guardian. Payments will be made at the end of each 12 month period that begins after the date of the covered Employee's death. A claim must be submitted to Us at the end of each 12 month period. A 12 month period begins:

1. when the Dependent Child enters a Child Care Center for the first time, within the period specified in (1b) above, after the covered Employee's death; or
2. on the first of the month following the covered Employee's death, if the Dependent Child was enrolled in a Child Care Center before the covered Employee's death.

Each succeeding 12 month period begins on the day immediately following the last day of the preceding period. Pro rata payments will be made for periods of enrollment in a Child Care Center of less than 12 months.

**Definitions**      For purposes of this benefit:

**Child Care Center** is a facility which:
1. is licensed and run according to laws and regulations applicable to child care facilities; and
2. provides care and supervision for children in a group setting on a regular, daily basis.

A Child Care Center does not include any of the following:
1. a Hospital;
2. the child's home;
3. care provided during normal school hours while a child is attending grades one through twelve.

**Dependent Child(ren)**      An Employee's child who meets the following requirements:
1. A child from live birth to 26 years old;
2. A child who is 26 or more years old, primarily supported by the Employee and incapable of self-sustaining employment by reason of mental or physical handicap.

A child, for purposes of this provision, includes an Employee's:
1. natural child;
2. adopted child, beginning with any waiting period pending finalization of the child's adoption. It also means the legally adopted child of the Employee's Spouse [or Domestic Partner/Partner to a Civil Union] provided the child is living with, and is financially dependent upon the Employee;
3. stepchild who resides with the Employee and is financially dependent upon the Employee;
4. child for whom the Employee is the court-appointed legal guardian, as long as the child resides with the Employee and depends on the Employee for financial support. Financial support means that the Employee is eligible to claim the dependent for purposes of Federal and State income tax returns.

**Surviving Spouse** will include the Spouse.

**Spouse** will include the Employee's lawful spouse under age 70.

**Exclusions**      The exclusions that apply to this benefit are in the *Common Exclusions* Section.
GA-00-2222a.00 as modified by GA-00-4002.00

## HOME ALTERATION AND VEHICLE MODIFICATION BENEFIT

We will pay the Home Alteration and Vehicle Modification Benefit shown in the *Schedule of Benefits*, subject to the following conditions and exclusions, when the Covered Person suffers a Covered Loss, other than a Loss of Life, resulting directly and independently of all other causes from a Covered Accident.

This benefit will be payable if all of the following conditions are met:

1. prior to the date of the Covered Accident causing such Covered Loss, the Covered Person did not require the use of any adaptive devices or adaptation of residence and/or vehicle;
2. as a direct result of such Covered Loss, the Covered Person now requires such adaptive devices or adaptation of residence and/or vehicle to maintain an independent lifestyle;
3. the Covered Person requires home alteration or vehicle modification within one year of the date of the Covered Accident.

**Exclusions**   The exclusions that apply to this benefit are in the *Common Exclusions* Section.
GA-00-2236.00

## REHABILITATION BENEFIT

We will pay the Rehabilitation Benefit shown in the *Schedule of Benefits*, subject to the following conditions and exclusions, when the Covered Person requires Rehabilitation after sustaining a Covered Loss resulting directly and independently of all other causes from a Covered Accident.

The Covered Person must require Rehabilitation within two years after the date of the Covered Loss.

**Definition**   For purposes of this benefit:
**Rehabilitation** means medical services, supplies, or treatment, or Hospital confinement (or part of a Hospital confinement) that satisfies all of the following conditions:

1. are essential for physical rehabilitation required due to the Covered Person's Covered Loss;
2. meet generally accepted standards of medical practice;
3. are performed under the care, supervision or order of a Physician;
4. prepare the Covered Person to return to his or any other occupation.

**Exclusions**   The exclusions that apply to this benefit are in the *Common Exclusions* Section.
GA-00-2248.00

## SEATBELT AND AIRBAG BENEFIT

We will pay the benefit shown in the *Schedule of Benefits*, subject to the conditions and exclusions described below, when the Covered Person dies directly and independently of all other causes from a Covered Accident while wearing a seatbelt and operating or riding as a passenger in an Automobile. An additional benefit is provided if the Covered Person was also positioned in a seat protected by a properly-functioning and properly deployed Supplemental Restraint System (Airbag).

Verification of proper use of the seatbelt at the time of the Covered Accident and that the Supplemental Restraint System properly inflated upon impact must be a part of an official police report of the Covered Accident or be certified, in writing, by the investigating officer(s) and submitted with the Covered Person's claim to Us.

**Definitions**   For purposes of this benefit:
**Supplemental Restraint System** means an airbag that inflates upon impact for added protection to the head and chest areas.

**Automobile** means a self-propelled, private passenger motor vehicle with four or more wheels which is a type both designed and required to be licensed for use on the highway of any state or country.
Automobile includes, but is not limited to, a sedan, station wagon, sport utility vehicle, or a motor vehicle of the pickup, van, camper, or motor-home type. Automobile does not include a mobile home or any motor vehicle which is used in mass or public transit.

**Exclusions**   The exclusions that apply to this benefit are in the *Common Exclusions* Section.
GA-00-2251.00

**SPECIAL EDUCATION BENEFIT**
We will pay the benefit, up to the Maximum Benefit shown in the *Schedule of Benefits.* for each qualifying Dependent Child.  The Covered Person's death must result, directly and independently of all other causes from a Covered Accident for which an Accidental Death Benefit is payable under this Policy.  This benefit is subject to the conditions and exclusions described below.

A qualifying Dependent Child must:
1.  a.  be enrolled as a full-time student in an accredited school of higher learning beyond the 12th grade level on the date of the covered Employee's Covered Accident; *or*
    b.  be at the 12th grade level on the date of the covered Employee's Covered Accident and then enroll as a full-time student at an accredited school of higher learning within 365 days from the date of the Covered Accident and continue his education as a full-time student.
2.  continue his education as a full-time student in such accredited school of higher learning; and
3.  incur expenses for tuition, fees, books, room and board, transportation and any other costs payable directly to, or approved and certified by, such school.

Payments will be made to each qualifying Dependent Child or to the child's legal guardian, if the child is a minor at the end of each year for the number of years shown in the *Schedule of Benefits*.  We must receive proof satisfactory to Us of the Dependent Child's enrollment and attendance within 31 days of the end of each year.  The first year for which a Special Education Benefit is payable will begin on the first of the month following the date the covered Employee died, if the surviving Dependent Child was enrolled on that date in an accredited school of higher learning beyond the 12th grade; otherwise on the date he enrolls in such school.  Each succeeding year for which benefits are payable will begin on the date following the end of the preceding year.

If no Dependent Child qualifies for Special Education Benefits within 365 days of the covered Employee's death, We will pay the default benefit shown in the *Schedule of Benefits* to the covered Employee's beneficiary.

**Definitions**         For the purposes of this benefit:
        **Dependent Child(ren)**    An Employee's child who meets the following requirements:
        1.  A child from live birth to 26 years old;
        2.  A child who is 26 or more years old, primarily supported by the Employee and incapable of self-sustaining employment by reason of mental or physical handicap.

        A child, for purposes of this provision, includes an Employee's:
        1.  natural child;
        2.  adopted child, beginning with any waiting period pending finalization of the child's adoption. It also means the legally adopted child of the Employee's Spouse [or Domestic Partner/Partner to a Civil Union] provided the child is living with, and is financially dependent upon the Employee;
        3.  stepchild who resides with the Employee and is financially dependent upon the Employee;
        4.  child for whom the Employee is the court-appointed legal guardian, as long as the child resides with the Employee and depends on the Employee for financial support.  Financial support means that the Employee is eligible to claim the dependent for purposes of Federal and State income tax returns.

**Exclusions**         The exclusions that apply to this benefit are in the *Common Exclusions* Section.
GA-00-2252a.00 as modified by GA-00-4002.00

**SPOUSE RETRAINING BENEFIT**

We will pay expenses incurred, as described below, up to the Maximum Benefit shown in the *Schedule of Benefits,* to enable the covered Employee's Spouse to obtain occupational or educational training needed for employment if the covered Employee dies directly and independently of all other causes from a Covered Accident. This benefit is subject to the conditions and exclusions described below.

This benefit will be payable if the covered Employee dies within one year of a Covered Accident and is survived by his Spouse who:

1. enrolls, within three years after the covered Employee's death in any accredited school for the purpose of retraining or refreshing skills needed for employment; and
2. incurs expenses payable directly to, or approved and certified by, such school.

**Definitions**      For the purposes of this benefit:

Spouse will include the Employee's lawful spouse under age 70.

**Exclusions**      The exclusions that apply to this benefit are in the *Common Exclusions* Section.
GA-00-2254a.00

22

Jennifer Gregs (305754)
Accident Specialist
Life and Accident Claim Services

✿ **Cigna.**

January 25, 2018

PO Box 22328
Pittsburgh, PA 15222-0328
Telephone 1-800-238-2125
Fax 203-678-7911

Laura Dawson
717 Detroit Ave
Royal Oak, MI 48073

| | |
|---|---|
| **Customer Name:** | **Laura Dawson** |
| **Date of Birth:** | ▮1966 |
| **Dependent Name:** | **Scott Dawson** |
| **Dependent Date of Birth:** | ▮1967 |
| **Policy Number:** | OK 967507 |
| **Underwriting Company:** | **Life Insurance Company of North America** |

Dear Mrs. Dawson:

I am sorry to learn about the death of Scott Dawson. I have completed my review of your claim for Group Accidental Death Insurance and have determined that this benefit is not payable. I am writing to explain the outcome of the review.

In an effort to help you understand the basis of this decision, I have provided the applicable policy provisions below. In order to be eligible for benefits, this claim must satisfy all of the policy provisions.

**Policy Provision**

The Covisint Corp. policy OK 967507 states:

> *"**COMMON EXCLUSIONS**
>
> In addition to any benefit-specific exclusions, benefits will not be paid for any Covered Injury or Covered Loss which, directly or indirectly, in whole or in part, is caused by or results from any of the following unless coverage is specifically provided for by name in the Description of Benefits Section:*
>
> *7.   Sickness, disease, bodily or mental infirmity, bacterial or viral infection or medical or surgical treatment thereof, except for any bacterial infection resulting from an accidental external cut or wound or accidental ingestion of contaminated food;*
>
> *11.   voluntary ingestion of any narcotic, drug, poison, gas or fumes, unless prescribed or taken under the direction of a Physician and taken in accordance with the prescribed dosage."*

"Cigna" and the "Tree of Life" logo are registered service marks of Cigna Intellectual Property, Inc., licensed for use by Cigna Corporation and its operating subsidiaries. All products and services are provided by or through such operating subsidiaries, Life Insurance Company of North America, Cigna Life Insurance Company of New York and Connecticut General Life Insurance Company by Cigna Corporation.

**EXHIBIT**

tabbies®  B

I have reviewed the following documents in making this determination:

- State of Michigan Certificate of Death
- Royal Oak Police Department's Case Report
- Oakland County Medical Examiner's investigative packet
- Oakland Community Health Network records
- Dearborn Family Clinic records
- Beaumont Hospital – Royal Oak records
- Group Accidental Death policy OK 967507

## Summary of Evidence

The Death Certificate states that Scott Dawson, 49, passed away in his home on 6/4/2017 and the Cause of Death was determined to be "Drug Abuse." The Manner of Death was ruled "Indeterminate."

The Royal Oak Police Department responded to the scene on 6/4/2017 and found Mr. Dawson obviously deceased, lying on a bed in the residence. The Case Report details that he had "fluids coming out of his right ear and dry foam over his mouth." Police did not observe any signs of foul play, but "dozens of prescription pill bottles filled with pills" were located in a dresser drawer. You reported that Mr. Dawson had a heart condition, and police had prior information in the system stating that he was "an abuser of prescription medications."

The Oakland County Medical Examiner's investigative packet includes a copy of the Intake Report, Autopsy Protocol and Toxicology Report. The Autopsy Protocol confirms the Cause of Death to be "Drug Abuse," and the Intake Report states that there were "no obvious signs of trauma or injury." Upon autopsy, Mr. Dawson's lungs were found to contain "large amounts of frothy fluid," and his nose and mouth were noted to have "purging fluid." The Deputy Medical Examiner also diagnosed him with the following:

"I. Drug Abuse
   A. Hydrocodone high level admixed with Acetaminophen, Clonazepam, Alprazolam, Dihydrocodeine/Hydrocodol, Hydromorphone, Diphenhydramine and Citalopram/Escitalopram in blood
II. Arteriosclerotic Cardiovascular Disease
   A. Cardiomegaly (441 grams)
   B. Coronary arteriosclerosis with 60% stenosis of the left anterior descending coronary artery
III. Emphysema, Lungs, Severe."

The Toxicology Report reveals that Mr. Dawson's femoral blood was positive for the following:

| Compound | Result | Units |
|---|---|---|
| Caffeine | Positive | mcg/mL |
| Acetaminophen | 53 | mcg/mL |
| 7-Amino Clonazepam | 170 | ng/mL |
| Alprazolam | 83 | ng/mL |
| Dihydrocodeine/Hydrocodol-Free | 66 | ng/mL |
| Hydrocodone-Free | 450 | ng/mL |
| Hydromorphone-Free | 5.3 | ng/mL |
| Diphenhydramine | 120 | ng/mL |
| Citalopram/Escitalopram | 280 | ng/mL |

"Cigna" and the "Tree of Life" logo are registered service marks of Cigna Intellectual Property, Inc., licensed for use by Cigna Corporation and its operating subsidiaries. All products and services are provided by or through such operating subsidiaries, including Life Insurance Company of North America, Cigna Life Insurance Company of New York and Connecticut General Life Insurance Company, and not by Cigna Corporation.

The following drug details were provided with the toxicology results:

"7-Amino-Clonazepam is a major metabolite of clonazepam. Plasma concentrations following chronic therapy with 6 mg/day of clonazepam were found to be 20 – 140 ng/mL...

Acetaminophen is an over the counter analgesic with antipyretic properties...The general accepted therapeutic range of acetaminophen is 10 – 20 mcg/mL of plasma...

Alprazolam is a DEA Schedule IV second-generation benzodiazepine...Reported therapeutic plasma concentrations of alprazolam are proportional to dose given: 3 mg/day produced steady-state levels of 30 ng/mL; 6 mg/day, 60 ng/mL; and 9 mg/day, 100 ng/mL...In combination with other central nervous system depressants...alprazolam can be come toxic at low concentrations...

Citalopram (Celexa) is a selective serotonin reuptake inhibitor (SSRI)...a racemic mixture of S- and R-enantiomers and...Steady-state serum or plasma levels from patients on a daily regimen of 30 to 60 mg of citalopram range from 9 – 200 ng/mL...

Dihydrocodeine (6-alpha-hydrocodol) is an opiate analgesic. It is available as a therapeutic agent (in products such as Synalgos-DC® and DHC Plus®) for oral use and can be formed in vivo as a metabolite of hydrocodone...

Diphenhydramine (Benadryl®...) is an antihistamine with sedative and anti-emetic effects....Following a single 50 mg oral dose of diphenhydramine, peak plasma concentrations at 2.3 hr average 66 ng/mL. Signs and symptoms of acute diphenhydramine toxicity include tremor, seizures, respiratory depression and cardiac arrhythmias...

Hydrocodone is a DEA Schedule II semisynthetic narcotic analgesic...This compound is reported to be highly addictive...Active metabolites of hydrocodone include hydromorphone and hydrocodol (dihydrocodeine)...In overdose, it produces the same manifestations as other opiates including: drowsiness, sedation, respiratory depression, coma and death. In reported overdosage, post-mortem blood levels ranged from 130 – 7000 ng/mL...

Hydromorphone is a Schedule II semi-synthetic narcotic opioid...Hydromorphone shares the same toxic effects as other opioids, e.g., constipation, nausea, drowsiness, respiratory depress, coma and death."

Oakland Community Health Network records indicate that Mr. Dawson was patient of Leonard Rosen, MD being treated for recurrent major depression. As part of his treatment, he was prescribed alprazolam (Xanax) 1 mg on 5/1/2015, and this medication remained unchanged through his most recent office record dated 11/17/2016.

Records from Dearborn Family Clinic show that Mr. Dawson became a patient at the facility on 10/6/2014, and his last appointment was on 6/2/2017. He received treatment from Howard Wright, DO for multiple medical conditions, to include anxiety, depression, paroxysmal atrial fibrillation, lumbar degenerative joint disease (DJD), lumbosacral neuritis, hyperlipidemia, hypertension, hypoproteinemia, severe asthma, lumbago and obesity. The records indicate he was last prescribed hydrocodone-acetaminophen 10-325 mg with no refills on 5/1/2015 for treatment of his DJD. He was initially prescribed alprazolam 1 mg on 5/1/2015 for treatment of his anxiety and maintained this medication order through his appointment on 3/27/2017. Mr. Dawson admitted to Dr. Wright during his visit on 4/15/2017 that he had been taking "6mg Xanax daily present" after the medication had been discontinued. Mr. Dawson was started on citalopram hydrobromide 20 mg on 4/8/2017 for treatment of his depression and anxiety, and maintained the prescription through his appointment on 6/2/2017. He was also started on clonazepam 2 mg on 4/15/2017 for treatment of his anxiety and maintained the prescription through his most recent visit.

"Cigna" and the "Tree of Life" logo are registered service marks of Cigna Intellectual Property, Inc., licensed for use by Cigna Corporation and its operating subsidiaries. All products and services are provided by or through such operating subsidiaries, including Life Insurance Company of North America, Cigna Life Insurance Company of New York and Connecticut General Life Insurance Company, and not by Cigna Corporation.

Beaumont Hospital - Royal Oak records indicate that Mr. Dawson was seen at their facility on numerous occasions, with his most recent visit being on 5/13/2017. He presented to the Emergency Department with complaints of right ankle pain after "running down steps at work and twisted his ankle." He was prescribed hydrocodone-acetaminophen (Norco) 5-325 mg for his ankle pain. The record also shows he had a current prescription for alprazolam 1 mg and citalopram 20 mg.

## Summary

I extend my condolences to you for the profound loss that you have suffered. Please understand that I must evaluate this claim based upon the information available in the file and the stipulations of the policy.

Based upon the information on file, Scott Dawson passed away on 6/4/2017, and the Cause of Death was concluded to be "Drug Abuse." The police and Deputy Medical Examiner found no signs of trauma or injury. Mr. Dawson was being treated for multiple medical conditions and has history of prescription medication abuse. His toxicology results revealed his blood to be positive for acetaminophen (mcg/mL), 7-amino clonazepam (170 ng/mL), alprazolam (83 ng/mL), dihydrocodeine/hydrocodol –free (66 ng/mL), hydrocodone-free (450 ng/mL), hydromorphone-free (5.3 ng/ml), diphenhydramine (120 ng/mL), citalopram/escitalopram (280 ng/mL) and caffeine. The medical records indicate that he had a current prescription for hydrocodone-acetaminophen 5-325 mg, alprazolam 1 mg, citalopram 20 mg and clonazepam 2 mg.

As referenced above, policy OK 967507 states that *"benefits will not be paid for any Covered Injury or Covered Loss which, directly or indirectly, in whole or in part, is caused by or results from any...voluntary ingestion of any narcotic, drug...unless prescribed or taken under the direction of a Physician and taken in accordance with the prescribed dosage."*

Mr. Dawson's toxicology results revealed his blood was positive for a "high level" of hydrocodone, which was within a fatal range, mixed with multiple prescription medications. Additionally, the Toxicology Report and medical records support that the levels of alprazolam, citalopram, 7-amino-clonazepam and hydromorphone found in his system were above therapeutic range and higher than would be expected if taken as prescribed. Upon autopsy, he was also found to have "large amounts of frothy fluid" in the lungs and fluid "purging" from his nose and mouth, which are symptoms consistent with that of drug overdose. As such, we have determined that his death was *"directly or indirectly, in whole or in part,"* caused by his *"voluntary ingestion"* of hydrocodone, alprazolam, citalopram and clonazepam, which he was not taking *"in accordance with the prescribed dosage."*

The policy further states that *"benefits will not be paid for any Covered Injury or Covered Loss which, directly or indirectly, in whole or in part, is caused by or results from any...Sickness, disease, bodily or mental infirmity...or medical or surgical treatment thereof."*

The medical information on file supports that Mr. Dawson was prescribed alprazolam, citalopram and clonazepam for his anxiety and depression. Since the Cause of Death includes toxicity from these drugs, which he was taking as medical treatment, we have determined that this death was *"directly or indirectly, in whole or in part,"* caused by his *"Sickness, disease, bodily or mental infirmity...or medical or surgical treatment thereof."*

For all the above stated reasons, Accidental Death Benefits are specifically excluded under the terms of policy OK 967507, and therefore, I must regretfully inform you that no Accidental Death Benefits are payable.

## Appeal Rights

This action is based on the information in our file. If you are not satisfied or do not agree with the reason(s) for the denial of your claim, you may appeal the decision to:

"Cigna" and the "Tree of Life" logo are registered service marks of Cigna Intellectual Property, Inc., licensed for use by Cigna Corporation and its operating subsidiaries. All products and services are provided by or through such operating subsidiaries, including Life Insurance Company of North America, Cigna Life Insurance Company of New York and Connecticut General Life Insurance Company, and not by Cigna Corporation.

Cigna Group Insurance
Appeals Team
P.O. Box 16491
Pittsburgh, PA 15242
Attn: Mike J. 5054323

LAAppeals@cigna.com
Fax # 860-771-4225

The appeal must be in writing, submitted within 60 days of the date you receive this letter and may contain the following information:

- the reason for the appeal and/or disagreement,
- the insured's name and social security number, and
- proof that Scott Dawson's death was not *"directly or indirectly, in whole or in part,"* caused by or the result of his *"voluntary ingestion of any narcotic, drug...unless prescribed or taken under the direction of a Physician and taken in accordance with the prescribed dosage,"*
- proof that his death was not *"directly or indirectly, in whole or in part,"* caused by or the result of his *"Sickness, disease, bodily or mental infirmity...or medical or surgical treatment thereof,"*
- proof that his death was the result of a *Covered Accident* as the term is defined under policy OK 967507 and that none of the other *Common Exclusions* apply.
- This proof can include, but is not limited to, expert medical and/or forensic opinion.

Under normal circumstances, you will be notified of the final decision within 60 days of the date your request for review is received. If there are special circumstances requiring delay, you will be notified of the final decision no later than 120 days after your request. You have a right to bring a legal action for benefits under the Employee Retirement Income Security Act of 1974 if your claim is denied on appeal. You may request copies of our claim file records relevant to the claim determination upon request and free of charge.

Nothing contained in this letter should be construed as a waiver of any rights or defenses under the policy. The determination has been made in good faith and without prejudice under the terms and conditions of the contract, whether or not specifically mentioned herein. Should you have any information which would prove contrary to our findings, please submit it. We would be pleased to review any objective information you would wish to submit.

We encourage you to either contact the Covisint Corp.'s employee benefits department or review the insurance booklet, certificate or coverage information made available to you, to determine if you are eligible for additional benefits.

Mrs. Dawson, if you have any questions please call me. You may reach me directly at 412-505-7561 or at our toll free number 1.800.238.2125 extension 5057561 from 7:00 a.m. to 5:30 p.m. Eastern Time, Monday through Thursday or email me at AccidentTeam@Cigna.com. (Callers outside the United States please dial 1.412.505.4100). If you call and get my voice mail, leave a message and your call will be returned within one business day.

Sincerely,

Jennifer C. ext. 5057561

"Cigna" and the "Tree of Life" logo are registered service marks of Cigna Intellectual Property, Inc., licensed for use by Cigna Corporation and its operating subsidiaries. All products and services are provided by or through such operating subsidiaries, including Life Insurance Company of North America, Cigna Life Insurance Company of New York and Connecticut General Life Insurance Company, and not by Cigna Corporation.

Mike J ext. 5054323
Appeals Specialist
Life and Accident Claim Services

**Cigna.**

Group Insurance
Life • Accident • Disability
P.O. Box 16491
Pittsburgh, PA 15242
Telephone 1-800-238-2125
Facsimile 860-771-4225

August 15, 2018

Timothy Takala
3200 Greenfield, Suite 260
Dearborn, MI 48120-1802

RECEIVED

AUG 2 0 2018

MORGAN & MEYERS, PLC

| | |
|---|---|
| **Insured Name:** | **Laura Dawson** |
| **Date of Birth:** | ▮1966 |
| **Dependent Name:** | **Scott Dawson** |
| **Dependent Date of Birth:** | ▮1967 |
| **Policy Number:** | OK 967507 |
| **Underwriting Company:** | **Life Insurance Company of North America** |

Dear Mr. Takala:

Per your request we have again reviewed the information contained in our file and have determined that our original decision to deny this claim for Group Dependent Accidental Death Insurance benefits under this policy remains unchanged.

In an effort to help you understand the basis of this decision, I have provided the applicable policy provisions. A copy of these policy provisions is enclosed. In order to be eligible for benefits, this claim must satisfy all of the policy provisions.

**Policy Provisions**

The Covisint Corporation policy OK 967507 states:

> *COMMON EXCLUSIONS*
>
> *In addition to any benefit-specific exclusions, benefits will not be paid for any Covered Injury or Covered Loss which, directly or indirectly, in whole or in part, is caused by or results from any of the following unless coverage is specifically provided for by name in the Description of Benefits Section:*
>
> 7.  *Sickness, disease, bodily or mental infirmity, bacterial or viral infection or medical or surgical treatment thereof, except for any bacterial infection resulting from an accidental external cut or wound or accidental ingestion of contaminated food;*

CIGNA Group Insurance is a registered service mark of CIGNA Intellectual Property, Inc., licensed for use by insurance company subsidiaries of CIGNA C Life Insurance Company of North America, CIGNA Life Insurance Company of New York and Connecticut General Life Insurance Company. Products and provided by these insurance company subsidiaries and not by CIGNA Corporation.

**EXHIBIT**

tabbies

C

11.   *voluntary ingestion of any narcotic, drug, poison, gas or fumes, unless prescribed or taken under the direction of a Physician and taken in accordance with the prescribed dosage*

## Evidence Evaluated

We based our decision to uphold the denial of benefits upon the Policy language and all the documents contained in the claim file, viewed as a whole, including the following specific information:

- Covisint Corporation policy OK 967507
- Group/Association Proof of Loss claim form
- State of Michigan Certificate of Death for Scott Dawson
- Ohio CVS Stores, L.L.C. #02588 Patient Presctription Record for Mr. Dawson for period 03/01/2017 thru 05/04/2017
- IntelliScript Pharmacy Canvas for Mr. Dawson
- Reports from Oakland County Office of the Medical Examiner
- Royal Oak Police Department Case Report
- Mr. Dawson's medical records
- Your letter of appeal received 06/20/2018
- 07/20/2018 report from Jerrold Leikin, M.D., Toxicology

## Summary of Evidence

The information in our file supports that on 06/08/2018 Scott Dawson was found deceased at his residence. Neighbors advised the police department that he was last seen alive on 06/04/2017. The Certificate of Death states that Mr. Dawson's Date of Death was 06/04/2017.

Ljubisa J. Dragovic, M.D., Chief Forensic Pathologist for the Oakland County Office of the Medical Examiner concluded that Mr. Dawson's death was due to "Drug Abuse," and that the Manner of Death was "Undeterminable." The toxicology report noted he tested at 53 mcg/mL Acetaminophen, 170 ng/mL 7-Amino Clonazepam, 83 ng/mL Alprazolam, 66 ng/mL Dihydrocodeine / Hydrocodol – Free, 450 ng/mL Hydrocodone – Free, 5.3 ng/mL Hydromorphone – Free, 102 ng/mL Diphenhydramine and 280 ng/mL Citalopram / Escitalopram in his femoral postmortem blood. The drug details with the toxicology report stated that Hydrocodone levels found in overdoses ranged from 130 – 7000 ng/mL. The drug detail noted that chronic therapeutic levels of Clonazepam were found in the 20 – 140 ng/mL range, and chronic therapeutic levels of Citalopram were found in the 9 – 200 ng/mL range.

Mr. Dawson's medical records were reviewed. Mr. Dawson was prescribed Alprazolam as treatment of his recurrent major depression by Leonard Rosen, M.D. Howard Wright, DO, prescribed him hydrocodone-acetaminophen for treatment of his degenerative joint disease. On 04/08/2017 Mr. Dawson started Citalopram as a replacement of his Alprazolam for treatment of his anxiety and depression. On 04/15/2017 Mr. Dawson noted to Dr. Wright that he had been taking 6mg Alprazolam daily after this prescription had been discontinued.

The IntelliScript Pharmacy Canvas for Mr. Dawson showed that he filled a prescription for Alprazolam from Brian Felice at Emergency Medicine on 05/13/2017 and Hydrocodone/Acetaminophen on 05/14/2017. He then filled a prescription from Dr. Wright for Alprazolam on 05/30/2017 and

CIGNA Group Insurance is a registered service mark of CIGNA Intellectual Property, Inc., licensed for use by insurance company subsidiaries of CIGNA Corporation, including Life Insurance Company of North America, CIGNA Life Insurance Company of New York and Connecticut General Life Insurance Company. Products and services are provided by these insurance company subsidiaries and not by CIGNA Corporation.

Citalopram on 06/05/2017. He also filled a prescription for Alprazolam on 05/06/2017 from Katheryn Mullin, Nurse Practitioner, on 05/06/2017.

Based upon the information on file as of 01/25/2018, the claim for Group Dependent Accidental Death Insurance benefits was denied as the evidence in the file supported that Scott Dawson was prescribed Hydrocodone, Alprazolam, Citalopram, Clonazepam and Hydromorphone as the medical treatment of his various sicknesses, diseases, bodily and mental infirmities. The Medical Examiner also concluded that his death was due to drug abuse. The toxicology report noted that Hydrocodone, Alprazolam, Citalopram and Clonazepam were taken in amounts greater than the prescribed dosage. This policy excludes payment of benefits for a loss which directly or indirectly, in whole or in part, is caused by or results from the voluntary ingestion of any narcotic, drug, poison, gas or fumes, unless prescribed or taken under the direction of a Physician and taken in accordance with the prescribed dosage. This policy also excludes payment for any loss which is in whole or in part, directly or indirectly, caused by or resulting from sickness, disease or bodily infirmity or the medical or surgical treatment of sickness, disease or bodily infirmity. Since his death was in whole or in part, directly or indirectly, caused by or resulting from the medical treatment of his sicknesses, diseases or bodily infirmities, and from him taking his medications in amounts greater than were prescribed by his physician, payment of a benefit is specifically excluded by policy OK 967507.

Our file documents that on 03/20/2018 our office received your appeal requesting a review of the claim decision. In your letter you stated that Mr. Dawson was prescribed Diazepam and Hydrocodone/Acetaminophen by seven different medical providers and he was ingesting them at their direction. You also stated that he was prescribed Alprazolam in conjunction with his prior medications. You opined that Mr. Dawson was prescribed medications that were beyond what his body could tolerate by various physicians who were not coordinating their prescription therapy regimen. You stated that Mr. Dawson's death is clearly classified as an accidental death and the Common Exclusions were not applicable.

All of the information in the claim file, including the information you submitted on appeal, was sent to Jerrold Leikin, M.D., Toxicologist for review. Dr. Leikin opined:

> "At some point he was prescribed all of the medications found in his post-mortem toxicology report. Of interest is that the alprazolam, which was administered at 6 mg per day, was supposed to be switched to clonazepam on April 16, 2017, however, it is apparent that Mr. Dawson was taking both drugs. Hydrocodone was prescribed on March 25, 2017, for pain. Diphenhydramine was also noted to be in the patient's records as of December of 2016 for itching. Citalopram was started on March 31, 2017. It showed be noted that citalopram on June 5, 2017, was re-prescribed as well as the hydrocodone on May 14, 2017, and the alprazolam on May 30, 2017."

> "Yes, there is documentation for all of these medications. The alprazolam and the clonazepam for anxiety, supposedly that was stress-related to his divorce, diphenhydramine for itching, citalopram for depression, hydrocodone for pain; although there is little documentation of the specifics of the location of the pain. He did have DJD/arthritis along with foot pain and back pain."

> "It does appear that the alprazolam, hydrocodone, and the citalopram levels are somewhat in excess of what would be found with therapeutic dosing (assuming no or little post-mortem distribution). Thus, Mr. Dawson may have been taking excess amount of hydrocodone and

CIGNA Group Insurance is a registered service mark of CIGNA Intellectual Property, Inc., licensed for use by insurance company subsidiaries of CIGNA Corporation, including Life Insurance Company of North America, CIGNA Life Insurance Company of New York and Connecticut General Life Insurance Company. Products and services are provided by these insurance company subsidiaries and not by CIGNA Corporation.

citalopram and possible alprazolam. It should be noted that there is no documentation that Mr. Dawson should have been taking both, alprazolam and clonazepam."

"Again, assuming minimal to no post-mortem redistribution, the amount of drug found in Mr. Dawson's system is consistent with as follows: alprazolam 9.5 mg, hydrocodone 187 mg, diphenhydramine 43.7 mg, and citalopram 408 mg. It does appear that the hydrocodone and the citalopram levels are higher than what would be prescribed, with the alprazolam slightly higher than what would be prescribed."

A review of the information in the file shows that Scott Dawson had a medical history of chronic back and foot pains, recurrent major depression, anxiety, degenerative joint disease and itching. Mr. Dawson was prescribed Hydrocodone, Alprazolam, Citalopram, Clonazepam and Hydromorphone as treatment for these diagnoses. On 06/08/2017 he was found deceased at his residence. Dr. Dragovic, Chief Forensic Pathologist for the Oakland County Office of the Medical Examiner, concluded that his death was due to drug abuse. Dr. Leikin, Toxicologist, did note that the postmortem level of alprazolam, hydrocodone, and citalopram levels were "…somewhat in excess of what would be found with therapeutic dosing." Dr. Leikin does state that there was no documentation that Mr. Dawson should not have been taking both Alprazolam and Clonazepam at the time of his death.

Policy OK 967507 states that "…*benefits will not be paid for any Covered Injury or Covered Loss which, directly or indirectly, in whole or in part, is caused by or results from… Sickness, disease, bodily or mental infirmity, bacterial or viral infection or medical or surgical treatment thereof.*" The evidence supports that Mr. Dawson's death was caused by his ingestion of Hydrocodone, Alprazolam, Citalopram, Clonazepam and Hydromorphone. The only reason Mr. Dawson had all of these medications was the result of the medical treatment of his sicknesses, diseases, bodily or mental infirmities. Since Mr. Dawson' death was directly or indirectly, in whole or in part, caused by or resulting from the medical treatment of his sickness, disease, bodily or mental infirmity, payment of benefits is excluded by the policy.

Policy OK 968106 also states benefits are not paid "…*for any Covered Injury or Covered Loss which, directly or indirectly, in whole or in part, is caused by or results from… voluntary ingestion of any narcotic, drug, poison, gas or fumes, unless prescribed or taken under the direction of a Physician and taken in accordance with the prescribed dosage.*" This payment exclusion is done regardless of understanding or intent. The evidence supports that Scott Dawson's death was directly caused by his voluntary ingestion of Hydrocodone, Citalopram and Alprazolam in an amount greater than prescribed. Since the evidence in the claim supports that his death was directly or indirectly, in whole or in part caused by or resulted from his ingestion of these medications in a way other than according to the prescribed dosage, payment of benefits is excluded by the policy.

Mr. Takala, if you disagree with our determination and wish to have it reviewed, please follow the steps described below.

Based on the information provided by your Employer, your claim is governed by the Employee Retirement Income Security Act of 1974, Public Law 93-406 (ERISA).

A second appeal request is not required but will be accepted if you have different or additional information to submit. Here is how to submit a second appeal review.

-- Submit your appeal letter to us within 60 days of your receipt of this letter.

CIGNA Group Insurance is a registered service mark of CIGNA Intellectual Property, Inc., licensed for use by insurance company subsidiaries of CIGNA Corporation, including Life Insurance Company of North America, CIGNA Life Insurance Company of New York and Connecticut General Life Insurance Company. Products and services are provided by these insurance company subsidiaries and not by CIGNA Corporation.

-- Your appeal letter should be sent to the Life Insurance Company of North America representative signing this letter to the address noted on the letterhead.

-- Your appeal letter may include written comments as well as any new information you may have.

-- You may also submit additional information in support of your appeal.

Under normal circumstances, you will be notified of a decision on your appeal within 60 days of the date your request for review is received. If there are special circumstances requiring delay, you will be notified of the reason for delay within 30 days of receipt of your request, and every 30 days thereafter.

You have the right to bring a legal action for benefits under the Employee Retirement Income Security Act of 1974 (ERISA) section 502(a) following an adverse benefit determination on appeal. You and your plan may have other voluntary alternative dispute resolution options, such as mediation. One way to find out what may be available is to contact your local United States Department of Labor Office or your State Insurance Regulatory Agency.

Please be advised that the Policy OK 967507 under which claim is being made states the following:

> **Legal Actions**
> *No action at law or in equity may be brought to recover under this Policy less than 60 days after written or authorized electronic proof of loss has been furnished as required by this Policy. No such action will be brought more than three years after the time such written proof of loss must be furnished.*

Nothing contained in this letter should be construed as a waiver of any rights or defenses under the policy. This determination has been made in good faith and without prejudice under the terms and conditions of the contract, whether or not specifically mentioned herein.

Please be aware that you are entitled to receive, upon request and free of charge, information relevant to your claim for benefits.

If you have any questions, please call me. You can reach me at our toll free number 1.800.238.2125 extension 5054323 from 7:00 a.m. to 5:00 p.m. Eastern Time, Monday through Thursday or e-mail me at LAAppeals@cigna.com. If you call and get my voice mail, leave a message and your call will be returned within one business day.

Sincerely,

*Mike J*

Mike J
ext. 5054323

Enclosure

CIGNA Group Insurance is a registered service mark of CIGNA Intellectual Property, Inc., licensed for use by insurance company subsidiaries of CIGNA Corporation, including Life Insurance Company of North America, CIGNA Life Insurance Company of New York and Connecticut General Life Insurance Company. Products and services are provided by these insurance company subsidiaries and not by CIGNA Corporation.

## COMMON EXCLUSIONS

In addition to any benefit-specific exclusions, benefits will not be paid for any Covered Injury or Covered Loss which, directly or indirectly, in whole or in part, is caused by or results from any of the following unless coverage is specifically provided for by name in the *Description of Benefits* Section:

1.  intentionally self-inflicted injury; suicide or any attempt thereat while sane or insane;
2.  commission or attempt to commit a felony or an assault;
3.  commission of or active participation in a riot or insurrection;
4.  bungee jumping; parachuting; skydiving; parasailing; hang-gliding;
5.  declared or undeclared war or act of war;
6.  flight in, boarding or alighting from an Aircraft or any craft designed to fly above the Earth's surface:
    a.  except as a passenger on a regularly scheduled commercial airline;
    b.  being flown by the Covered Person or in which the Covered Person is a member of the crew;
    c.  being used for:
        i.  crop dusting, spraying or seeding, giving and receiving flying instruction, fire fighting, sky writing, sky diving or hang-gliding, pipeline or power line inspection, aerial photography or exploration, racing, endurance tests, stunt or acrobatic flying; or
        ii. any operation that requires a special permit from the FAA, even if it is granted (this does not apply if the permit is required only because of the territory flown over or landed on);
    d.  designed for flight above or beyond the earth's atmosphere;
    e.  an ultra-light or glider;
    f.  being used for the purpose of parachuting or skydiving;
    g.  being used by any military authority, except an Aircraft used by the Air Mobility Command or its foreign equivalent;
7.  Sickness, disease, bodily or mental infirmity, bacterial or viral infection or medical or surgical treatment thereof, except for any bacterial infection resulting from an accidental external cut or wound or accidental ingestion of contaminated food;
8.  travel in any Aircraft owned, leased or controlled by the Subscriber, or any of its subsidiaries or affiliates. An Aircraft will be deemed to be "controlled" by the Subscriber if the Aircraft may be used as the Subscriber wishes for more than 10 straight days, or more than 15 days in any year;
9.  a Covered Accident that occurs while engaged in the activities of active duty service in the military, navy or air force of any country or international organization. Covered Accidents that occur while engaged in Reserve or National Guard training are not excluded until training extends beyond 31 days;
10. operating any type of vehicle while under the influence of alcohol or any drug, narcotic or other intoxicant including any prescribed drug for which the Covered Person has been provided a written warning against operating a vehicle while taking it. Under the influence of alcohol, for purposes of this exclusion, means intoxicated, as defined by the law of the state in which the Covered Accident occurred;
11. voluntary ingestion of any narcotic, drug, poison, gas or fumes, unless prescribed or taken under the direction of a Physician and taken in accordance with the prescribed dosage;
12. in addition, benefits will not be paid for services or treatment rendered by a Physician, Nurse or any other person who is:
    a.  employed or retained by the Subscriber;
    b.  providing homeopathic, aroma-therapeutic or herbal therapeutic services;
    c.  living in the Covered Person's household;
    d.  a parent, sibling, spouse or child of the Covered Person.

GA-00-1403.00

**Payment of Claims to Foreign Employees**
The Subscriber may, in a fiduciary capacity, receive and hold any benefits payable to covered Employees whose place of employment is other than the United States of America.

We will not be responsible for the application or disposition by the Subscriber of any such benefits paid. Our payments to the Subscriber will constitute a full discharge of Our liability for those payments under this Policy.

**Physical Examination and Autopsy**
We, at Our own expense, have the right and opportunity to examine the Covered Person when and as often as We may reasonably require while a claim is pending and to make an autopsy in case of death where it is not forbidden by law.

**Legal Actions**
No action at law or in equity may be brought to recover under this Policy less than 60 days after written or authorized electronic proof of loss has been furnished as required by this Policy. No such action will be brought more than three years after the time such written proof of loss must be furnished.

**Beneficiary**
The beneficiary is the person or persons the Employee names or changes on a form executed by him and satisfactory to Us. This form may be in writing or by any electronic means agreed upon between Us and the Subscriber. Consent of the beneficiary is not required to affect any changes, unless the beneficiary has been designated as an irrevocable beneficiary, or to make any assignment of rights or benefits permitted by this Policy.

A beneficiary designation or change will become effective on the date the Employee executes it. However, We will not be liable for any action taken or payment made before We record notice of the change at our Home Office.

If more than one person is named as beneficiary, the interests of each will be equal unless the Employee has specified otherwise. The share of any beneficiary who does not survive the Covered Person will pass equally to any surviving beneficiaries unless otherwise specified.

If there is no named beneficiary or surviving beneficiary, or if the Employee dies while benefits are payable to him, We may make direct payment to the first surviving class of the following classes of persons:
1. spouse;
2. child or children;
3. mother or father;
4. sisters or brothers;
5. estate of the Covered Person.

**Recovery of Overpayment**
If benefits are overpaid, We have the right to recover the amount overpaid by either of the following methods.
1. A request for lump sum payment of the overpaid amount.
2. A reduction of any amounts payable under this Policy.

If there is an overpayment due when the Covered Person dies, We may recover the overpayment from the Covered Person's estate.

GA-00-1600.00 as modified by RA-GA-1000.00